UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

ACTION NO. 7:14-CV-00175-ART

BOBBY TAYLOR

PLAINTIFF

VS:        **RESPONSE TO DEFENDANT SOUTHWIRE'S
           MOTION TO EXCLUDE PLAINTIFF'S EXPERT**


SOUTHWIRE TOOLS & EQUIPMENT                    DEFENDANT

_____


     The Plaintiff by way of Response to the Motion to Exclude Plaintiff's expert made by the Defendant states as follows:

**1.  MUCH OF THE DEFENDANT'S ARGUMENT ATTACKS THE PRELIMINARY OPINION OF PFEIFFER THAT MOV SPACINGS WERE INCORRECT, WHICH WAS ALSO THE PRELIMINARY OPINION OF MSHA.  MSHA CHANGES TO REPORT. PFEIFFER NO LONGER RELIES UPON THAT SPACING AS A COMPONENT OF HIS ANALYSIS.**

     The Defendant argues, incorrectly, that Pfeiffer's "main theory" is that the spacing between MOV components in the multimeter was inadequate.  When MSHA issued its preliminary report MSHA found that the clearance distances between the parts were inadequate.  Based upon this testing Pfeiffer issued his preliminary report.  However, after MSHA amended its report that component was no longer part of

Pfeiffer's opinion.  In fact Underwriters Laboratory did not bless the equipment but found that the exterior spacing of the multimeter terminals would not be acceptable if these were considered energized.  They are and would not meet the standard.  Underwriters also found fault with the mounting of the PTC component.  In short, Underwriters only found the interior components in the meter to be acceptable.  (See Pfeiffer Affidavit page 7).

> **2. PFEIFFER'S THEORY THAT THE PLAINTIFF SET THE MULTIMETER ON TOP OF THE POWER RECEPTACLE HE WAS TESTING WAS ONLY ONE POSSIBLE EXPLANATION FOR CONDUCTIVE MATERIALS BEING BLOWN ACROSS THE TERMINALS OF THE RECEPTACLE.**

When the Defendant's product exploded there was an immediate arc flash across the terminals of a nearby receptacle.  Pfeiffer's analysis shows two possibilities, one would be that the meter was placed on top of the receptacle and when the meter exploded particles of combustion and burnt materials from the meter itself would have caused the exposed cooper energized conductors that made up the receptacle to short across their parts which turned into an arc flash (Exhibit 4, Pfeiffer Affidavit p. 5).  However, the Plaintiff testified that the unit was "probably to the side and not on top".  His Affidavit indicates that his memory still is that it was onto the side but it was possible that the unit was on top.  That would leave the second possibility.

2

If the meter was beside the receptacle, on the ground or on the shelf beside the receptacle the other possibility is that when the meter exploded that produced a dust cloud of fine particles of coal dust from the mine floor in the area.  Coal dust being conductive and this cloud itself coming across the cooper terminals causing a short circuit and arc flash.  (Pfeiffer Affidavit pg. 5).

### 3. PFEIFFER'S OPINION THAT WATER OR DUST GOT INTO THE DEVICE IS FULLY SUPPORTED BY THE EVIDENCE.

The unit failed a water tightness test. What the Defendant calls a "weatherproof case" was not weatherproof.  The carrying case itself was subjected to a submersion test by Pfeiffer and immediately got wet.  The Defendant's argument is based upon the unrealistic premises that coal mines are neither damp nor dusty.  The Affidavit of Bobby Taylor indicates just how wet and dusty the mine is and that the multimeter was subjected on a daily basis to water and dust conditions.  Something caused the Defendant's product to fail on its first use.  The Defendant's expert offered no explanation for this failure but admitted it.  Pfeiffer posits moisture and dust as being likely suspects. The Underwriters Laboratory and MSHA investigation revealed that the unit failed testing for being water tight or dust proof.

**4. PFEIFFER IS MAKING NO TESTIMONY**
**ABOUT DESIGN DEFECTS, MANUFACTURING**
**PROBLEMS OR COMPLIANCE STANDARDS.**

The design or manufacturing defects were established by MSHA and Underwriters Laboratory which showed that the multimeter was not water tight. Pfeiffer is offering no testimony about design defects, compliance testing or manufacturing.

**5. WHAT IS PFEIFFER'S EXPERT**
**ROLE IN THIS CASE?**

Pfeiffer is an expert on arc flashes. His Affidavit fully explains his expertise. He has studied arc flashes for nearly half a century. He has published articles about the same.

The Defendant's multimeter exploded. The fact that the multimeter exploded on its first use is not in question. The fact that it was defectively designed or manufactured such that moisture could get in it is not in dispute.

Pfeiffer's role in the trial will be to explain how an explosion can trigger an arc flash and what is more likely and that does not get into the area of product design, manufacturing or compliance testing.

**ARGUMENT**

Rule 702 requires the Plaintiff to prove that his expert's testimony is based upon sufficient facts and data.

4

The testing by the United States Government Mine Safety Agency and Underwriters Laboratory indicates that the multimeter was unsafe because it allowed water to get in it; the Defendant's expert admitted that an internal component of the unit failed.  The fact that unit exploded near a 995 volt receptacle is undisputed.  Pfeiffer will offer proof at this trial as to what is probable about the relationship of that explosion and an arc flash.

Rule 702 requires that testimony of an expert to be the product of reliable principals and methods.  The methodology for exploring and investigating an arc flash is National Fire Protection Association Standard NFPA 921 which Pfeiffer strictly followed.

Finally the witness must apply the principles and methods of his investigation reliably to the facts of this case.  Generally in this case both sides agree that the meter exploded.  Pfeiffer says that one reason for that is contamination such as dust or moisture.  The Defendant's expert takes the other possibility, internal component failure where a component failed.  Pfeiffer believes that it is more likely than not that the failure in this case was that a conductive material such as water or coal dust got into the unit and caused a short across one of the components given the fact that the Defendant claims that several

5

thousand of these meters have been sold without incident and given the fact that it was on its first use.  The explosion triggered an arc flash.  The conductive material across the receptacle came from either the unit itself exploding or from transient coal dust in the room and on the floor of the mine. There are no facts of this case that have been ignored.

None of these opinions require expertise in compliance testing, product design, product manufacturing or compliance standards.  What the Defendant incorrectly characterized is as  Pfeiffer's "central opinion" is simply not an opinion at all that he will offer in this case, nor need to.  Pfeiffer's testimony will clearly assist a jury. Someone needs to explain what an arc flash is and how an explosion of a product can cause one.  These are matters firmly within the expertise of Pfeiffer and his methodology is not subject to attack.

WHEREFORE, the Defendant for the Plaintiff demands that the Motion to Exclude his Expert testimony be overruled.

Respectfully submitted,

s/Lawrence R. Webster

**WEBSTER LAW OFFICES**
P. O. DRAWER 712
PIKEVILLE, KENTUCKY 41502
ATTORNEY FOR PLAINTIFF
Websterlawrencer@bellsouth.net

6

## <u>CERTIFICATE OF SERVICE</u>

        I certify that a copy of the above pleading will be served electronically by the Court's CM/ECF system on the date filed.  This 20th day of August, 2015.

Hon. Daniel E. Danford
Emily L. Startsman
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, KY 40507-1758
ddanford@stites.com
estartsman@stites.com


                        s/Lawrence R. Webster

8