UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| BOBBY TAYLOR,  Plaintiff,  EXCEL MINING, LLC,  Intervenor Plaintiff,  v.  SOUTHWIRE TOOLS & EQUIPMENT,  Defendant. | Civil No. 14-175-ART  **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

In November 2013, Bobby Taylor, an electrician with Excel Mining, LLC ("Excel"), was injured while taking a voltage reading in Pike County, Kentucky. Taylor was using a Southwire Model 11060S Multimeter when an "arc flash," a type of electrical explosion, occurred, injuring him. R. 1-1. Taylor suffered second-degree burns to his hands, arms, and other parts of his body. *Id.* at 2.

Taylor claims that Excel's chief electrician, Rick James, purchased the allegedly defective Southwire multimeter from Lowe's Home Improvement ("Lowe's"). R. 23-1 at 3. Though the packaging had Southwire Tools & Equipment's ("Southwire") name on it, *see* R. 23-10, the multimeter was manufactured and packaged by Shenzhen Everbest Machinery Industry Co., Ltd. ("Shenzhen"), a China-based company. R. 23-1

at 3.  Shenzhen works with Underwriters Laboratories ("UL"), a national compliance organization, to test a sample of the multimeters before distribution.  *Id.* at 9, 11.  Shenzhen sells the multimeters to Southwire, who then distributes them without modification to Lowe's and similar stores.  *Id.* at 4, 10–11.

Taylor brought this products liability case against Southwire.  R. 1-1.  Taylor alleged that the multimeter was defective and "unreasonably dangerous" as designed and manufactured.  R. 1-1 at 3.  He claimed that the multimeter was defective because it was not waterproof to the stated specifications, and because it failed to meet national standards for the minimum distance required between components.  *Id.* at 3–4.  He also alleges that the multimeter could not handle voltage 10 percent above the normal level.  *Id.*  According to Taylor's proposed expert, dust particulate and moisture permeated the allegedly waterproof multimeter, causing the arc flash and injuring Taylor.  R. 24-1 at 3.   Excel intervened to recover money it had paid to Taylor for workers' compensation.  R. 34; R. 35.

Southwire moved for summary judgment on Taylor's claims, arguing that (1) it is protected by the Kentucky Middleman Statute, Kentucky Revised Statute ("KRS") 411.340, and (2) Taylor's claims fail for lack of proof.  R. 22.  Because the Kentucky Middleman Statute protects Southwire, its motion for summary judgment is granted.

## DISCUSSION

A court may grant summary judgment only where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a). When deciding a motion for summary judgment, the court must "draw all reasonable inferences in favor of the non-moving party." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013)). A court decides questions of law at the summary judgment stage. *See Seal v. Morgan*, 229 F.3d 567, 580 (6th Cir. 2000) (holding that court makes determinations of law and questions of fact are reserved for jury). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the plaintiff." *Myers v. Westinghouse Corp.*, 187 F.3d 637 (6th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## I. Southwire Is Protected by Kentucky's Middleman Statute.

The Court applies Kentucky law in diversity cases like this one. *BMW Stores, Inc. v. Peugeot Motors of Am., Inc.*, 860 F.2d 212, 214 (6th Cir. 1988). Kentucky's Middleman Statute relieves a wholesaler, distributor, or retailer from liability where: (a) the manufacturer is subject to the court's jurisdiction; (b) the product is sold in its original condition or in the same condition in which it was received by the middleman; (c) the middleman did not breach an express warranty; and (d) the middleman did not know or have reason to know that the product was unreasonably dangerous. KRS 411.340; *Turpin v. Stanley Schulze & Co., Inc.*, 2008-CA-000298-MR, 2009 WL 875218 (Ky. Ct. App. Apr. 3, 2009); *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 59–60 (Ky. Ct. App. 1999). "The purpose of the Kentucky Middleman Statute is to protect middlemen who 'merely sell' another manufacturer's products." *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474, 477 (Ky. Ct. App. 2005).

3

Taylor concedes that Southwire meets the first two requirements of the middleman statute: (a) that Shenzhen is subject to the Court's jurisdiction, R. 23-1 at 22, and (b) that Southwire distributes the multimeters in the same condition as Southwire received them, R. 23-1 at 10. The plaintiff also concedes that Southwire had no actual knowledge that the multimeter was defective. R. 23-1 at 15. However, Taylor argues that Southwire is not protected by the middleman statute for three reasons. First, he claims that advertising holding out Southwire as the multimeter's manufacturer makes Southwire liable as if it were the manufacturer. R. 14 at 2. Second, he argues that Southwire breached an express warranty, violating requirement (c) of the middleman statute. Third, Taylor argues that Southwire had reason to know the multimeter was defective and unreasonably dangerous, violating requirement (d) of the statute. R. 23-1. Taylor's arguments fail, for the three reasons outlined below, so Southwire is entitled to summary judgment as a matter of law.

### A. Kentucky Has Not Adopted the "Apparent Manufacturer" Doctrine, Which Conflicts with the Middleman Statute.

Kentucky has not adopted the apparent manufacturer doctrine, so Taylor cannot recover against Southwire under that theory. Taylor states that "advertising holding out [Southwire]" as the multimeter's manufacturer should make Southwire liable for the damage caused by the alleged defects. R. 14 at 2. Taylor cites no case law. This principle comes from the "apparent manufacturer" doctrine in the *Restatement (Third) of Torts*. Restatement (Third) of Torts: Prod. Liab. § 14, *Selling or Distributing as One's Own a Product Manufactured by Another* (1998). A distributor who "distributes as its own a product manufactured by another" is liable for damage caused by the

4

product as if it were the manufacturer. *Id.*; *see also* Am. L. Prod. Liab. 3d § 32:39. But Kentucky has not adopted the apparent manufacturer doctrine. *Rushing v. Flerlage Marine Co.*, No. 3:08-CV-00531-JDM, 2011 WL 4538075, at *2–3 (W.D. Ky. Sept. 29, 2011) (stating Kentucky's Supreme Court has not adopted the apparent manufacturer doctrine); *see also* Restatement, Prod. Liab. § 14, *Case Citations by Jurisdiction* (including no Kentucky cases). The *Rushing* court discussed how the apparent manufacturer doctrine directly conflicts with Kentucky's middleman statute. The statute limits "the scope of all common law product liability actions." *Rushing*, 2011 WL 4538075, at *3. Particularly, "the middleman statute . . . limits liability to the product's manufacturer if the manufacturer is identified and subject to the jurisdiction of the court." *Id.* But under the apparent manufacturer doctrine, the apparent manufacturer would remain liable *even if* the actual manufacturer is identified. *Id.* Thus, the "[t]he full-fledged adoption of the doctrine" would be "in tension or outright conflict" with the Kentucky Products Liability Act. *Id.* "The Kentucky Supreme Court is unlikely to adopt a Restatement provision that conflicts with Kentucky's statutory law." *Id.* (citing *Steel Techs., Inc. v. Congleton*, 234 S.W.3d 920, 929–30 (Ky. 2007); *Commonwealth ex rel. Cowan*, 828 S.W.2d 610, 614 (Ky. 1992)). And even the *Restatement (Third)* acknowledges that relevant statutory provisions would trump the apparent manufacturer doctrine. "To the extent that a statute specifies responsibilities, the statutory terms control." *Id.* at *3 n.3 (citing Restatement, Prod. Liab. § 14, cmt. b). In Kentucky, the middleman statute controls. Therefore, Taylor cannot use this doctrine to recover from Southwire as if it were the multimeter's manufacturer.

### B. Taylor and Excel Lack the Required Privity with Southwire to Claim Breach of Express Warranty, an Exception to the Middleman Statute.

A middleman can be held liable under Kentucky law if it breaches an express warranty. But Taylor and Excel both lack the privity required to claim that Southwire breached an express warranty, because neither has a contractual or a buyer-seller relationship with Southwire. Sellers create express warranties when they make "an affirmation of fact or promise . . . to the buyer" that (1) relates to the goods and (2) becomes part of the basis of the bargain between the buyer and seller. KRS 355.2–313(1)(a). A seller's description of the goods that becomes "part of the basis of the bargain" creates an express warranty that the goods conform to the description. *Id.* at 355.2–313(1)(b). For example, an express warranty is created if (a) a Christmas tree seller promises a buyer that the tree would not fall over if pushed, and (b) the buyer relies on that promise in purchasing it (because he had two small children). Kentucky requires privity of contract or a direct buyer-seller relationship for breach of warranty claims, with limited exceptions enumerated in the Kentucky Uniform Commercial Code. *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 926 (Ky. 1994), *overruled on other grounds by Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011); *see Roberts v. Solideal Tire, Inc.*, No. CIV. 06-14-DLB, 2007 WL 2990536, at *2 n.5 (E.D. Ky. Oct. 10, 2007) ("Kentucky law requires privity where liability is predicated on warranty . . . ."). Privity of contract exists for parties to a contract. Outside of a contractual or a buyer-seller relationship, KRS 355.2-318 states that an express or implied warranty extends only to the buyer's family members and household residents or guests. Warranties do not extend to employees of a commercial purchaser.

6

*McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999).

The Kentucky Supreme Court has repeatedly refused to extend warranties beyond those in privity. In *Williams v. Fulmer*, the purchaser of an allegedly defective motorcycle helmet could not sue the manufacturer or distributor for breach of warranty. 695 S.W.2d 411, 414 (Ky. 1985). The helmet's user lacked the required privity because he purchased the helmet from a private individual, not the distributor or the manufacturer. *Id.* at 412–13. Similarly, *Compex International Company v. Taylor* held that the user of an allegedly defective chair had no claim for breach of implied warranty against its manufacturer because his parents purchased the chair from K-Mart Corporation, not directly from the manufacturer. 209 S.W.3d 462, 463–64 (Ky. 2006), *as modified on denial of reh'g* (Jan. 25, 2007).

In this case, no privity exists between Southwire and Taylor or between Southwire and Excel. Southwire does not have a contract or a buyer-seller relationship with Taylor or with Excel. Southwire sold the multimeter to Lowe's. R. 22-1 at 4; R. 23-1 at 15. And Excel obtained the multimeter from Lowe's. *Id.* at 2. Neither Taylor nor Excel qualify as a third-party beneficiary of any express warranty Southwire may have provided to Lowe's. KRS 355.2-318 (stating only family members and household residents or guests are third-party beneficiaries of express or implied warranties). Thus, the express warranty exception to the middleman statute does not apply to Taylor's claims. Indeed, Taylor's and Excel's real issue is with Shenzhen, who manufactured the multimeter and made the statements on its packaging. The Kentucky middleman statute exists for exactly this purpose, to protect pass-through entities like

7

Southwire and hold the manufacturers of defective products liable.

Though Kentucky's highest court has not explicitly ruled whether privity is required for breach of express warranty, the Sixth Circuit has interpreted Kentucky law to so require. *Waterfill v. Nat'l Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007). The *Waterfill* plaintiff was using a safety belt while sitting in a tree-mounted deer stand. *Id.* at 402–03. He alleged that the defective belt buckle broke, throwing him to the ground. *Id.* He sued the buckle's manufacturer, National Molding Corporation, for breach of express warranty. *Id.* at 404. But National Molding was entitled to summary judgment because the plaintiff lacked privity. *Id.* The court reasoned that "[p]rivity existed only between National Molding and its distributors, . . . the immediate purchasers of its Duraflex buckles." *Id.* at 405 (citing *Franz*, 885 S.W.2d at 926); *see also A. LoPresti & Sons, Inc. v. Gen. Car & Truck Leasing Sys., Inc.*, 79 F. App'x 764, 770 (6th Cir. 2003) (holding food distributor had no claim for breach of express warranty against truck-engine manufacturer because the companies "had no contractual relationship" under Ohio law).

Even advertisements that create express warranties require privity for a plaintiff to sustain an action. Taylor and Excel argue that representations about waterproofing on the multimeter's packaging and on Southwire's website created express warranties. R. 23-1 at 16 (citing *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982) ("A catalog description or advertisement may create an express warranty in appropriate circumstances.")). But the plaintiffs' reliance on *Overstreet* is misplaced. In that case, a veterinarian and horse farmer sued a drug manufacturer, Norden

8

Laboratories, Inc., for breach of express warranty. *Id.* at 1288. The veterinarian alleged that he became interested in rhinomune, a horse vaccine, after a Norden sales representative called him about it. *Id.* After reading Norden's "promotional literature" and advertisements, the veterinarian purchased the vaccine from Norden. *Id.* He later alleged that rhinomune caused six of his pregnant mares to miscarry. *Id.* The court allowed the claim for breach of express warranty to proceed because the veterinarian had a buyer-seller relationship with Norden, the vaccine's manufacturer. *Id.* However, neither Taylor nor Excel purchased the multimeter directly from Southwire. Therefore, *Overstreet* is inapplicable to this case.

One court allowed consumers to bring a claim for breach of express warranty against a manufacturer without a direct buyer-seller relationship or privity of contract. *See Naiser v. Unilever*, 975 F. Supp. 2d 727, 737–40 (W.D. Ky. 2013). The *Naiser* plaintiffs bought shampoo from Rite-Aid and Target. *Id.* at 731–32. The shampoo's packaging said it was a "smoothing treatment," but the plaintiffs alleged it caused "hair loss" and "scalp burns." *Id.* They sued Unilever, the shampoo manufacturer. *Id.* The court held that the plaintiffs stated a claim for breach of express warranty. *Id.* at 737–38. But *Naiser* is distinguishable. The *Naiser* court allowed the plaintiffs' claim to proceed because Unilever, the manufacturer, put on the packaging "specific," "written" express warranties that "were clearly intended for the product's consumers." *Id.* at 738, 740. Here, Southwire neither manufactured nor packaged the multimeter— Shenzhen did. R. 23-1 at 3, 11 (conceding Southwire did not modify the multimeter's packaging before delivery to Lowe's). Any words on the multimeter's package came

9

from Shenzhen, not Southwire. Moreover, the Court is reluctant to extend principles of Kentucky law outside the bounds set by the legislature. Though the Western District of Kentucky explicitly considered other jurisdictions' rulings in extending claims for breach of express warranty beyond the buyer-seller relationship, *id.* at 740, the Kentucky Supreme Court cautioned against such modifications. "[T]he scope of warranty protections in commercial transactions is a matter of public policy that has been expressly decided by the [Kentucky] General Assembly." *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006) (citing *Fulmer*, 695 S.W.2d at 414). Any extension, modification, or repeal of the privity requirement "is a question left to the legislature." *Id.*

### C. Southwire Did Not Have Reason to Know the Multimeter Was Defective and Unreasonably Dangerous at the Time of Distribution or Sale, the Other Exception to the Middleman Statute.

A middleman is liable under Kentucky law if it had reason to know the product was defective and unreasonably dangerous to the user at the time of distribution or sale. A plaintiff must "allege . . . specific or special knowledge of dangerousness" to avoid the middleman statute's protections. *Conrad v. Sherwin Williams Co.*, No. CIV.A. 12-237-JBC, 2012 WL 5332494, at *2 (E.D. Ky. Oct. 29, 2012). But insufficient evidence exists to suggest that Southwire had reason to know the multimeter was defective or unreasonably dangerous. Neither Southwire nor Taylor knows of other similar malfunctions in the approximately 12,000 multimeters Southwire sold to Lowe's. R. 23-1 at 15. Southwire received no reports of arc flashes or other defective multimeters prior to Taylor's incident. R. 21-4 at 6. Moreover, Southwire did not have

reason to test the multimeters from Shenzhen because Shenzhen tested the multimeters with UL, a compliance organization. R. 23-1 at 3, 9. UL periodically tests a sample of the multimeters. *Id.* at 9. Shenzhen communicates directly with UL. *Id.* Southwire has no role in the multimeter testing or certification process. *Id.* The plaintiff concedes that a distributor's reliance on the manufacturer's certifications and testing is standard for the industry. *Id.* And the plaintiff's expert stated that a large retailer may test a sample of devices received from a manufacturer, but such testing would not necessarily reveal a device-specific issue. R. 20 at 216; *see Richardson v. Rose Transp., Inc.*, No. CIV.A. 5:11-317-KKC, 2014 WL 121690, at *11 (E.D. Ky. Jan. 13, 2014) (granting summary judgment because defendant lessor could not have uncovered alleged defect without "field testing" each truck it leased).

Finally, the multimeter did not have a visible defect. R. 23-1 at 2 (alleging an "interior component of the meter failed"); *see Flint v. Target Corp.*, No. 3:07CV-00600-R, 2009 WL 87469, at *4 (W.D. Ky. Jan. 13, 2009) *aff'd*, 362 F. App'x 446 (6th Cir. 2010) (holding plaintiff suing pharmacy did not present sufficient evidence that the pills had been altered or tampered with since their manufacture); *Conrad*, 2012 WL 5332494, at *2 (granting summary judgment because plaintiff did not allege facts creating inference that store manager had "any special knowledge to foresee the ultimate danger") (internal quotation marks and citations omitted); *see generally Smith v. Leveelift, Inc.*, 2005 WL 2465821, at *5, (E.D. Ky. Oct. 6, 2005) (stating visible wear and tear is not evidence of a design defect). Thus, the evidence indicates Southwire had no reason to know of a single multimeter's alleged defect or its alleged

11

unreasonably dangerous condition.  The plaintiff has not presented any evidence to the contrary.  Therefore, Southwire cannot be held liable under this exception to the middleman statute's protections.

## CONCLUSION

Southwire is entitled to Kentucky's affirmative defense for distributors of allegedly defective products, the middleman statute.  The Court grants Southwire's motion for summary judgment.

Accordingly, it is **ORDERED** that:

(1)  Southwire's motion for summary judgment, R. 22, is **GRANTED**.

(2)  All pending deadlines and hearings are **CANCELLED**.

(3)  The Clerk of the Court shall strike this case from the Court's active docket.

(4)  All other pending motions, including Southwire's motion to exclude the plaintiffs' expert, R. 21, are **DENIED AS MOOT**.

(5)  A separate judgment will issue.

This the 11th day of September, 2015.



Signed By:
*Amul R. Thapar* AT
United States District Judge